IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAMRAN KHAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OCWEN FINANCIAL CORP., et al. | : | NO. 16-3292 |

## MEMORANDUM

**Padova, J.**                                                                                         February 13, 2017

Plaintiff Kamran Khan brought suit against Defendants Ocwen Financial Corporation, Ocwen Loan Servicing LLC (collectively "Ocwen"), One West Bank, and U.S. Bank after his home was threatened with foreclosure. He asserts state law claims of (i) quiet title, (ii) abuse of process, (iii) intentional infliction of emotional distress, and (iv) fraud. Defendants move to dismiss all four Counts of the Complaint. For the following reasons, we grant Defendants' Motion and dismiss Plaintiff's Complaint with prejudice.

**I.      BACKGROUND**

The Complaint alleges the following facts. Plaintiff and his then-wife executed a mortgage in 2005 using the Mortgage Electronic Registration System ("MERS"). (Compl. ¶ 12). MERS later assigned the loan to One West Bank. (Id. ¶ 13). According to the Complaint, MERS and One West Bank routinely accomplished assignments using a robo-signer, conducting no prior review and failing to properly notarize relevant documents. (Id. ¶¶ 14-16).

In 2010, One West initiated foreclosure proceedings against Plaintiff in the Court of Common Pleas of Montgomery County. (Id. ¶ 17). While Plaintiff admitted in that action that he was behind on payments, he claimed that the mortgage was not in default because he was

wrongly denied a loan modification.[1]  One West subsequently assigned the loan to Lehman Brothers and then, when Lehman went bankrupt, U.S. Bank took over the loan as part of Lehman's bankruptcy proceedings.  (Compl. ¶¶ 18, 21-22).

At some point, Ocwen began servicing the loan and took over as the plaintiffs in the foreclosure proceedings.[2]  (Id. ¶ 28).  During discovery in those proceedings, Plaintiff attempted to depose a representative of MERS and One West who had testified in other cases about the robo-signing of assignments without prior review or proper notarization.  (Id. ¶¶ 29, 31).  However, in June of 2016, before that deposition was conducted, Ocwen discontinued the foreclosure proceedings.  (Id. ¶¶ 32-33).  Soon after Ocwen discontinued the foreclosure proceedings, Plaintiff initiated this suit.

Count I of the Complaint asserts a quiet title claim, averring that the "underlying mortgage [on Plaintiff's home] is a nullity" because the assignments were "fraudulently created." (Id. ¶¶ 40-41).  Count II asserts that the foreclosure action against Plaintiff was "malicious, dilatory, and an intentional and flagrant abuse of process."  (Id. ¶¶ 45-47).  Count III asserts an intentional infliction of emotional distress claim, alleging that, as a result of Defendants' conduct, Plaintiff "has suffered severe emotional and psychological distress, including but not limited to the fact that the financial pressures caused by Defendants contributed to . . . the dissolution of his marriage and the disproportionate division of the net marital estate."  (Id. ¶ 50).  Finally, Count IV asserts a claim for fraud based on Defendants' conduct in "robo-signing purported assignments."  (Id. ¶¶ 51-54).

---

[1] (See Amended Answer in Foreclosure Action, attached as Ex. B to Defs.' Mot. to Dismiss, at ¶ 9.)

[2] In is unclear from the Complaint whether the loan was assigned to Ocwen or if Ocwen simply took over as the servicer.  (Compare Compl. ¶ 20 with Compl. ¶ 28.)

Defendants have filed a Motion to Dismiss all four Counts of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff's response to this Motion contests the dismissal of the quiet title claim, but does not address Defendants' arguments as to the abuse of process, intentional infliction of emotional distress, and fraud claims.[3]

## II.  LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and "construe the complaint in the light most favorable to the plaintiff." DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

---

[3] Given Plaintiff's failure to address Defendants' arguments to dismiss Counts II, III, and IV, we have the discretion pursuant to Eastern District of Pennsylvania Local Rule 7.1(c) to dismiss those Counts as unopposed, and dismissal on that basis is appropriate here.  See, e.g., Celestial Cty. Dev. Corp. v. City of Phila., 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012) ("Plaintiffs who fail to brief their opposition to portions of motions to dismiss do so at the risk of having those parts of the motions to dismiss granted as uncontested." (citations omitted)); Nelson v. DeVry, Inc., Civ. A. No. 07–4436, 2009 WL 1213640, *10 (E.D. Pa. April 23, 2009) ("Failure to address even part of a motion in a responsive brief may result in that aspect of the motion being treated as unopposed." (citations omitted)); Smith v. Nat'l Flood Ins. Program of the Fed. Emergency Mgmt. Agency, 156 F. Supp. 2d. 520, 525 (E.D. Pa. 2001) (granting motion to dismiss as unopposed with respect to claim plaintiff failed to address).  Nevertheless, given the readily apparent deficiencies in Plaintiff's pleadings, we address Defendants' arguments on their merits as an alternative basis for dismissal.

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

**III.   DISCUSSION**

Plaintiff asserts state law claims for quiet title, abuse of process, intentional infliction of emotional distress, and fraud against all Defendants. Defendants move to dismiss all four Counts pursuant to Rule 12(b)(6).

    A.    Quiet Title

In the quiet title claim in Count I of the Complaint, Plaintiff asserts that the assignments of his mortgage were improper and fraudulent and that, as a result, the assignments and the mortgage lien itself are illegitimate "nullities." In their Motion to Dismiss, Defendants ask that we dismiss the quiet title claim, arguing, inter alia, that Plaintiff does not have standing to challenge the validity of the mortgage assignments.

4

Under Pennsylvania law, a plaintiff may file a quiet title action to determine "the validity of any document, obligation or deed affecting any right lien, title or interest in land." Pa. R. Civ. P. 1061(b)(2), (3); White v. Young, 186 A.2d 919, 921 (Pa. 1963) (stating that a quiet title action is the mechanism by which a landowner may resolve "clouds on title.")  To have standing to bring such a claim, however, "a Plaintiff must establish that he or she has suffered an 'injury in fact' that is both 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Doe ex rel. Doe v. Lower Merion School Dist., 665 F.3d 524, 542 (3d Cir. 2011).  Accordingly, where a borrower challenges a defective mortgage assignment, he must "'demonstrate potential injury from the enforcement of the note and mortgage by a party acting under a defective assignment." Sounders v. Bank of Am., Civ. A. No. 12-1074, 2012 WL 7009007, at *11 (M.D. Pa. Dec. 6, 2012) (quoting In re Walker, 466 B.R. 271, 285-86 (Bankr. E.D. Pa. 2012)), report and recommendation adopted, 2013 WL 451863 (M.D. Pa. Feb. 6, 2013).

Here, the Complaint alleges that the assignments of Plaintiff's mortgage are invalid because they were accomplished with robo-signing and are not documented in any valid or enforceable documentation.  The Complaint does not, however, allege any actual or imminent injury that Plaintiff will suffer from the enforcement of the mortgage, which he does not dispute he entered into.

In Eaton v. Bank of America, N.A., No. 347 WDA 2014, 2014 WL 10752211 (Pa. Super. Ct. Dec. 23, 2014), the Pennsylvania Superior Court addressed the precise question raised in this case: "Does a Plaintiff have standing to challenge assignment of a mortgage through a quiet title action?" Id. at *1.  In concluding that the plaintiff did not have standing, the Eaton court noted the defendant's argument that plaintiff was neither a party to, nor a third party beneficiary of, the assignment at issue.  Id. at *6; see also Sounders, 2012 WL 7009008, at *10 (observing that a

5

mortgage debtor who is neither a party to, nor a third party beneficiary of, an assignment of his mortgage does not have contractual standing to challenge the assignment). It further explained that "'the only interest or right which an obligor . . . has in the instrument of assignment is to insure him or herself that he or she will not [h]ave to pay the same claim twice.'" Eaton, 2014 WL 10752211, at *6 (quoting Sounders, 2012 WL 7009008, at *11); 6A C.J.S. Assignments § 133 (same). Here, as in Eaton, Plaintiff has not alleged that he is a party to, or a third party beneficiary of, the assignments at issue, nor has he alleged that he will be forced to pay his mortgage twice. We therefore conclude, consistent with Eaton, that he does not have standing to challenge the propriety of the assignments in this case.

In arguing that he does have the requisite standing, Plaintiff cites to two cases from other jurisdictions. (See Pl.'s Mem. in Opp. to Defs.' Mot. at 4-5 (citing In re Agard, 444 B.R. 231 (Bankr. E.D.N.Y. 2011), *vacated in part by* Agard v. Select Portfolio Servicing, Inc., No. 11-2366, 2012 WL 1043690 (E.D.N.Y. 2012), and Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009)). However, neither of these cases addressed a debtor's standing to challenge the assignment of a mortgage, much less a debtor's standing to challenge such an assignment in a quiet title action. Rather, in Agard, the debtor challenged an assignee's standing to enforce a mortgage in the debtor's bankruptcy proceedings and, in Landmark, the issue was whether MERS was entitled to intervene in a foreclosure action. See Agard, 2012 WL 1043690, at *1; Landmark, 216 P.3d at 161. These cases are therefore easily distinguishable from the instant case and do not dictate a different result than we have reached here.

For the foregoing reasons, we conclude that Plaintiff does not have standing to challenge the validity of the assignments of his mortgage by way of a quiet title claim. We therefore dismiss Count I of Plaintiff's Complaint.

B.    Abuse of Process

In the abuse of process claim in Count II, Plaintiff alleges that the foreclosure proceedings constituted an abuse of process. Defendants argue that we should dismiss this claim because Plaintiff has not and cannot plead facts sufficient to support this cause of action. "'To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff [;] (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.'" Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998) (quoting Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)). Here, Defendants specifically argue that the Complaint does not allege the second element of this claim, i.e., that they used legal processes "to accomplish a purpose for which the process was not designed." Id. Indeed, the Complaint does not plead facts that support the notion that the foreclosure actions against Plaintiff were taken for a reason other than to foreclose on his home. Moreover, Plaintiff makes no attempt to argue otherwise in his response to Defendants' Motion. We therefore conclude that the Complaint fails to allege an essential element of an abuse of process claim and we dismiss Count II on that basis as well as because Defendants' Motion to Dismiss Count II is unopposed. See supra note 3.

C.    Intentional Infliction of Emotional Distress

In Count III of the Complaint, Plaintiff asserts a claim for intentional infliction of emotional distress ("IIED"). Defendants argue that we should dismiss this claim because the Complaint fails to allege the essential elements of such a claim. To establish an IIED claim under Pennsylvania law, a plaintiff must show that (1) defendants' conduct was extreme or outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe. Hill v. Borough of Doylestown, No. 14-2975, 2015 WL

1874225, at *5 (E.D. Pa. Apr. 23, 2015) (citing Rosembert v. Borough of E. Landsdowne, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014)).  Pennsylvania also requires a plaintiff asserting an IIED claim to provide evidence of physical injury caused by the defendants.  See Hart v. O'Malley, 647 A.2d 542, 554 (Pa. Super. Ct. 1994) (citations omitted).  Moreover, Pennsylvania courts have found "sufficient basis" for an IIED claim only when "presented [with] the most egregious conduct."  Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (citations omitted).  Examples of the "most egregious conduct" includes burying the body of a person killed with an automobile in a field, intentionally fabricating records to suggest an innocent person had killed someone, or a physician issuing a press release falsely stating that a professional athlete was suffering from a fatal disease.  See Kasper v. Cty. Of Bucks, 514 F. App'x 210, 217 (3d Cir. 2013) (reviewing past Pennsylvania cases with successful IIED claims).

Here, the Complaint pleads only that Defendants assigned Plaintiff's mortgage to different lenders (at least one using a robo-signing process), started foreclosure proceedings when Plaintiffs mortgage was past due, and then discontinued those same proceedings.  None of these activities can be considered extreme or outrageous, much less considered the "most egregious conduct."  Hoy, 720 A.2d at 754.  Further, the Complaint does not allege that Plaintiff suffered any physical injury as a result of Defendants' conduct.   We therefore conclude that the Complaint does not allege the essential elements of an IIED claim, and we dismiss Count III on that basis as well as because Plaintiff did not respond to Defendants' arguments regarding this claim.  See supra note 3.

    D.    <u>Fraud</u>

In Count IV of the Complaint, Plaintiff alleges that Defendants engaged in fraud insofar as they engaged in "robo-signing, purported assignments" and subsequently imposed liens.

Defendants argue, inter alia, that we should dismiss this claim because it does not meet the heightened pleading requirements for fraud claims set forth in Fed. R. Civ. P. 9(b).  To state a claim for fraud under Pennsylvania law, a plaintiff must show:

> "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance."

Gruenwald v. Advanced Computer Applications, Inc., 730 A.2d 1004, 1014 (Pa. Super. Ct. 1999) (quoting Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994)).  At the same time, Rule 9(b) provides heightened pleading requirements for fraud claims, with plaintiffs obliged to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

In order to satisfy Rule 9(b), a complaint "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise conduct with which [it is] charged.'"  Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (alteration in original) (quoting Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)) abrogated on other grounds by Twombly, 550 U.S. 544.  A plaintiff can meet this requirement "by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into [his] allegations of fraud.'"  Lum, 361 F.3d at 224 (quoting Seville Indus. Mach. Corp. v. Southwest Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)).

Here, the Complaint appears to allege that it was fraudulent for MERS to assign Plaintiff's loan to One West Bank using a robo-signing process.  However, the Complaint is devoid of any allegations that "inject precision and some measure of substantiation" to that claim that such conduct constituted actionable fraud.  Lum, 361 F.3d at 224 (quotation omitted).  Moreover, the Complaint fails to allege who made a fraudulent misrepresentation to Plaintiff,

9

what the misrepresentation was, that anyone intended Plaintiff to rely on that misrepresentation, or that Plaintiff did, in fact, justifiably rely on it.  Accordingly, we conclude that the Complaint fails to allege a cognizable fraud claim pursuant to the heightened pleading standards in Rule 9(b).  We therefore dismiss Count IV of the Complaint on that basis as well as because Plaintiff has not responded to Defendants' arguments regarding this claim.  See supra n.3.

### E.  Leave to Amend

Notably, Plaintiff has not sought leave to amend to correct any pleading deficiencies that we might identify.  However, "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  Here, we conclude that any amendment would be futile because neither the Complaint nor Plaintiff's response brief suggest any factual or legal basis on which to rest the claims that Plaintiff has asserted.  We therefore dismiss all of Plaintiff's claims with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, we grant Defendants' Motion to Dismiss Plaintiff's Complaint and dismiss all four Counts with prejudice.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.